**LACK COMPANY, Inc., Appellant,**

v.

**INTERNATIONAL SHOE COMPANY,**
**Appellee.**

Court of Appeals of Kentucky.

June 17, 1960.

Joseph S. Freeland, Paducah, for appellant.

Henry O. Whitlow (Waller, Threlkeld, Whitlow & Byrd), Paducah, for appellee.

PALMORE, Judge.

The appellee, International Shoe Company, a manufacturer of shoes, recovered a $3,231.64 judgment against appellant, The Lack Company, Inc., a wholesaler of sporting goods, as the purchase price of a quantity of hunting boots sold and delivered by International to Lack. Having been unable to sell the boots, Lack attempted unsuccessfully to return them to International, contending that was the understanding under which they were ordered. There being no proof that International's salesman was authorized to make such an agreement, the trial court directed a verdict for International.

This appeal involves one point, and that is whether Lack had sufficient evidence of an applicable trade custom to support a case of apparent authority.

In Peaslee-Gaulbert Co. v. Rogers, 1927, 220 Ky. 338, 295 S.W. 137, 55 A.L.R. 377, it was pointed out that the ostensible authority of a salesman, as such, would not extend beyond what is customary to the trade in like undertakings. Assuming the converse of this proposition to be true, and being unable to show any actual authority of the agent to agree that unsold goods might be returned, Lack sought to prove a general practice to that effect in the sporting goods business. The description of this alleged practice, as preserved by avowal, is as follows:

"Q. Now what was that practice generally in the sporting goods industry with reference to the return of such merchandise? A. The practice was that with relation to the manufacturer's agent, to contact him on his rounds and advise him or write him, or write the factory direct, and advise them that you had certain items that in your area were not moving as well as they should have been and *request permission* to return this merchandise for credit, and in all cases where we have asked for it they *have given us this permission* to return it, for if it does not move here somewhere it does, according to their representative. [Emphasis added.]

"Q. Now is that what you had in mind when you had this conversation with Mr. Johnson, in substance, in which he told you that he would see that you did not get hurt by this transaction? A. That's correct.

"Q. Do you know whether he was familiar with that practice? A. I assume so. I wouldn't have bought that many boots if he hadn't been.

"Q. Is that the practice generally in the sporting goods industry? A. Yes. I would go one step further and state that, in other words, its customer relation. It depends on the circumstances surrounding it.

"Q. All things being equal such return would be permitted, and that would be the general practice? A. That's right."

It is our opinion that a practice of allowing returns of unsold merchandise, on request, in the interest of customer relations would not justify the assumption that an ordinary sales representative is authorized to make it one of the conditions of an order. Therefore, even if the evidence in this case had been sufficient to prove such an understanding between Lack and the salesman, the testimony as to the alleged trade custom would not have supported a verdict on the theory of apparent authority.

Judgment affirmed.